**In re Gerald D. ARNOLD, Debtor.**

**Thomas J. BLEAU, Trustee, Plaintiff,**

**v.**

**FIRST OF AMERICA BANK–CENTRAL, a Michigan Banking Corporation, Defendant.**

Bankruptcy No. 89–11728.
Adv. No. 90–1116.

United States Bankruptcy Court, E.D. Michigan, S.D.

Sept. 27, 1991.

Karen E. Evangelista, Rochester Hills, Mich., for plaintiff.

Deanna Swisher, Lansing, Mich., for defendant.

## MEMORANDUM OPINION DECIDING CASE SUBMITTED ON BRIEFS

ARTHUR J. SPECTOR, Bankruptcy Judge.

This is an action by the trustee to avoid a payment made to First of America Bank–

Central (the Bank) pursuant to 11 U.S.C. § 547(b). Because the only issue raised by the pleadings is entirely legal, I entered an order calling for the parties to submit briefs in lieu of scheduling a trial on this matter.

On December 19, 1988, the Bank obtained a judgment against the Debtor in the amount of $5,404.40. In an effort to collect this judgment, the Bank served an affidavit and writ of garnishment upon the Michigan Department of Treasury (the State) on February 17, 1989. Pursuant to this writ, the State filed a garnishment disclosure in the appropriate state district court on June 14, 1989. On the same date or shortly thereafter, the State turned over to the Bank the sum of $1,598.24.[1] Two weeks later, on June 28, 1989, the Debtor filed his bankruptcy petition.

Section 547(b) provides that "the trustee may avoid any transfer of an interest of the debtor in property" if certain conditions are met. The condition most relevant here is that the transfer must occur "on or within 90 days before the date of the filing of the [bankruptcy] petition." 11 U.S.C. § 547(b)(4)(A). The trustee contends that, for purposes of § 547(b), the transfer occurred on June 14, 1989, the date the garnishment disclosure was filed, and was therefore within the statutory 90–day period. The Bank argues that the transfer actually occurred on the date that the writ of garnishment was served, which was more than 90 days before the Debtor filed bankruptcy. The only real issue, then, is the point in time at which the transfer in question was made.

Because of the Code's expansive definition of the term "transfer," see 11 U.S.C. § 101(54), there can be little doubt, nor does the Bank dispute, that garnishment liens are within the scope of § 547(b). See In re Conner, 733 F.2d 1560, 1562 (11th Cir.1984). But to determine when the transfer actually occurred, reference must be made to 11 U.S.C. § 547(e). With exceptions not relevant here, that subsection pro-

---

1. Although the parties differ as to when such payment was actually made, the exact date is irrelevant since the Bank acknowledges that the payment was within § 547(b)'s reachback period.

vides that "a transfer is made at the time such transfer is perfected." 11 U.S.C. § 547(e)(2)(B). And "a transfer of ... property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B). Thus, the transfer at issue in this case took place when the Bank's interest was "perfected as against subsequent judicial liens obtainable against the debtor by creditors on a simple contract." [2] L. King, 4 *Collier on Bankruptcy*, ¶ 547.16[1] (15th ed. 1991). The determination as to when the Bank's garnishment lien was perfected "depends entirely on state law." *Id.* at ¶ 547.16[2]; *see also In re Latham*, 823 F.2d 108, 110 (5th Cir. 1987); *Conner*, 733 F.2d at 1562.

I could find no authority which explicitly states the requirements in Michigan for perfection of a post-judgment garnishment. It is clear under Michigan law, however, that "a garnishment lien attaches upon service of the writ." *Mary v. Lewis*, 399 Mich. 401, 411, 249 N.W.2d 102 (1976). And since the entry of judgment perfects a pre-judgment garnishment lien, *id.*, I believe it can be safely assumed that a post-judgment lien is perfected when the writ is served. *Cf. In re Brinker*, 12 B.R. 936, 938, 7 B.C.D. 1299 (Bankr.D.Minn.1981); *see also In re Toga Mfg.*, 28 B.R. 165, 168, 10 B.C.D. 378 (Bankr.E.D.Mich.1983) (Graves, J.) (stating without elaboration that a Michigan judgment creditor "perfected its judgment by serving writs of garnishment on several of [the judgment debtor's] creditors").

The conclusion that a post-judgment garnishing creditor would have priority in Michigan over subsequent judicial lien creditors is reinforced by Mich.Comp.Laws § 440.9301(1)(b), which provides that a secured creditor is subordinated to a lien creditor if the security interest is not perfected before the latter acquires status as a lien creditor. Since the service of a post-judgment writ of garnishment confers lien-creditor status on the garnishing creditor, *see Earl Dubey & Sons v. Macomb Contracting*, 97 Mich.App. 553, 565, 296 N.W.2d 582 (1980), the Bank would in this case have priority even over a secured creditor if the latter did not perfect his lien before the Bank served its writ.

Finally, the conclusion that the Bank perfected its lien under Michigan law upon service of its writ of garnishment is consistent with what appears to be the law in many other jurisdictions. *See, e.g., Conner*, 733 F.2d at 1562 (Georgia); *In re Lucas*, 107 B.R. 332, 335 (Bankr. D.N.M.1989) (New Mexico); *In re Harrington*, 70 B.R. 301, 305, 15 B.C.D. 809 (Bankr. S.D.Fla.1987) (Florida); *In re Rosenfield*, 62 B.R. 515, 525 (Bankr.N.D.Tex.1986) (Texas); *In re Larson*, 21 B.R. 264, 269 (Bankr.D.Utah 1982) (Utah); *Brinker*, 12 B.R. at 938 (Minnesota).

Although I have been speaking in terms of only one transfer, it is of course true that the Bank's receipt of payment within the preference period actually constituted a second transfer subject to challenge under § 547(b). *See In re Rose*, 25 B.R. 744, 746, 8 C.B.C.2d 594 (E.D.Mo. 1982). But because the Bank held a perfected security interest in the money paid, the payment was in essence a surrender to the Bank of collateral for its undersecured claim of $5,404.40. The trustee therefore cannot avoid the payment under § 547(b) because it did not permit the Bank to receive more than it would have otherwise been entitled to receive under the Code.

---

**2.** Citing *In re Johnson*, 53 B.R. 919 (Bankr. N.D.Ill.1985), the trustee appears to take the position that the transfer was not effective until such time as the Debtor's rights in the garnished funds were foreclosed. But *Johnson* does not support such a proposition. That case analyzed the debtor's rights in garnisheed wages to determine whether the debtor could avoid the garnishment pursuant to § 522(f), a provision which can only be invoked to disencumber property in which the debtor has an interest.

53 B.R. at 922–24. *Johnson* does not suggest, nor does the Code provide any basis for concluding, that the transfer of a debtor's property interest must be absolute and unconditional for purposes of § 547(b). *Cf. In re Brinker*, 12 B.R. 936, 938, 7 B.C.D. 1299 (Bankr.D.Minn.1981) ("The trustee correctly points out that the debtor or the garnishee might be able to defeat the lien of the [garnishing creditor.] These parties, however, are not 'creditors on a simple contract.' ").

*See* 11 U.S.C. § 547(b)(5); *see also In re Chambers,* 125 B.R. 788, 792 (Bankr. W.D.Mo.1991); *Collier, supra,* at ¶ 547.08.

For the foregoing reasons, I hold that a perfected lien attached to the proceeds held by the State and owing to the Debtor on February 17, 1989, the date the Bank served its writ of garnishment. Because this date is outside the 90–day period identified in § 547(b)(4)(A), and because the subsequent release of the garnisheed funds did not improve the Bank's position as specified in § 547(b)(5), a judgment dismissing this adversary proceeding will be entered contemporaneously herewith.